NELSON THEATRE COMPANY *vs.* GEORGE D. NELSON & another.

Hampden.    September 23, 1913. — October 22, 1913.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DE COURCY, JJ.

*Equity Pleading and Practice,* Decree, Appeal, Master. *Landlord and Tenant,* Waiver of covenant against assignment. *Waiver. Equity Jurisdiction,* To enjoin continuing trespass. *Damages,* In equity, Loss of profits. *Evidence,* Opinion: experts, Of profits.

Upon the overruling of a demurrer to a bill in equity, the better and more satisfactory practice is the making of an interlocutory decree to that effect; but if such a decree is not made, and instead an entry, "demurrer overruled," is made upon the docket, this is an entry of a judgment of the court upon the demurrer, and an appeal seasonably taken by the defendant brings before this court the question, whether the demurrer was overruled rightly.

Where one of the covenants in a lease of real estate is that the lessee shall not assign the lease without the lessor's consent in writing, if several successive assignments are made and the lessor, knowing of the assignments, accepts the rent reserved by the lease from the successive assignees, he thereby waives the provision as to non-assignment so far as such assignments are concerned, and cannot claim a forfeiture of the lease by reason of them.

The lessee of a theatre adapted to the production of pictorial vaudeville, having been expelled from the premises by the lessor, by a suit in equity sought to enjoin the lessor from keeping him from the use of the leasehold and for damages. The merits of the suit were determined in the plaintiff's favor and it was referred to a master to determine what damages resulted to the plaintiff during the time he was kept from the premises. The master, having received evidence of the gross receipts and net profits of the plaintiff's business during the year preceding the wrongful expulsion, permitted certain persons, whom he found to be familiar, by reason of large experience, with the management and supervision of theatres presenting the same class of entertainment as the plaintiff's in various localities, as well as with the size, seating capacity and location of the plaintiff's theatre, to testify, subject to the defendant's objection, as to the value of the plaintiff's leasehold "over and above the rent and operating expenses" during the time that the plaintiff was deprived of possession. *Held,* that an exception founded upon the defendant's objection to this evidence must be overruled, because the admission of the testimony was within the master's discretion and, while the master would have ruled more judiciously in excluding the testimony of the experts, it could not be said positively that there were no aspects of the testimony which tended to support his view, or that his discretion was exercised so grossly in the plaintiff's favor as to render his decision in admitting the testimony plainly wrong.

BILL IN EQUITY, filed in the Superior Court on March 31, 1909, and afterwards amended, against George D. Nelson and the William Fox Amusement Company, a corporation.

The plaintiff alleged in substance as follows: On July 24, 1906, the defendant Nelson and one Emma G. Vinton leased the Nelson Theatre in Springfield to the Shubert Theatrical Company for five years, the lease containing a covenant by the lessee that it would not assign the lease nor underlet the premises without the consent in writing of the lessors, and a provision that, should any material condition of the lease be violated, the lease should become null and void at the election of the lessors. There were several successive assignments of the lease, the plaintiff being the last assignee. The lessors did not assent in writing to any of these assignments, but, with full knowledge of each assignment, accepted from the assignee rent and, during the period of the last two assignments, permitted extensive improvements to be made on the premises. The assignment to the plaintiff was dated March 17, 1908. On January 24, 1908, Emma G. Vinton died, and the defendant Nelson became sole owner of the premises. On March 16, 1909, he delivered to the defendant William Fox Amusement Company a lease of the premises, and on March 22, acting either for himself or as agent for that company, expelled the plaintiff from the premises, and, at the time the suit was brought, continued to keep the plaintiff from the use of them. The William Fox Amusement Company was occupying the theatre to the exclusion of the plaintiff and intended to continue to do so. The plaintiff, when expelled, was conducting upon the premises a profitable business in giving public theatrical performances and moving picture exhibitions. The bill also alleged that the damages suffered by the plaintiff by reason of its being excluded from the leased premises were of such a nature that the plaintiff could not be compensated therefor fully and fairly in an action at law, and that the plaintiff would suffer irreparable injury if its exclusion from the premises further continued and possession thereof was not restored to it forthwith.

The prayers of the bill were in substance that the defendants be enjoined from continuing in possession of the premises to the exclusion of the plaintiff, that the premises be surrendered to the plaintiff, that the defendant Nelson be enjoined from asserting that there had been a forfeiture of the lease by reason of any of the assignments, "that an accounting be had to determine what damages the plaintiff" had suffered from the alleged

wrongful acts of the defendants, and that the defendants be ordered to pay the damages so ascertained to the plaintiff.

The defendants demurred to the amended bill.    The demurrers were overruled, as stated in the opinion.

The case was heard by *Pierce*, J., who on April 26, 1909, made findings of fact and rulings of law favorable to the plaintiff, and a "decretal order" granting the injunctions asked for in the bill and appointing Nathan P. Avery, Esquire, as master "to hear the parties and their witnesses upon the question of damages, to assess the damages, if any, and to report the facts upon which the assessment" was based. The defendants appealed from such order.

George D. Nelson died on February 8, 1910, and George N. Dunn, the executor of his will, was admitted as a defendant in his stead.

Exceptions of the defendants to the master's report were heard by *Crosby*, J., who filed a memorandum overruling the exceptions to the report and directing a decree confirming the report.   No such decree appears to have been made.

A final decree was made granting the prayers of the bill, directing that "the defendants jointly and severally" pay to the plaintiff $3,535.02 with interest, "being the amount of damages suffered by the plaintiff by reason of the wrongful acts of the defendants in interfering with the plaintiff's possession of" the premises in question; that the defendant William Fox Amusement Company pay to the plaintiff the further sum of $213.58 with interest, "being the amount of damages caused to the plaintiff by the wrongful acts of the William Fox Amusement Company alone in interfering with the property of the plaintiff upon the" premises; and that the defendant Dunn as executor pay to the plaintiff the further sum of $1,023.05 with interest, "being that part of the rent of the Nelson Theatre paid in advance by the plaintiff proportionate to the time during which the plaintiff was out of possession of said theatre by reason of having been evicted by the defendants." The defendants appealed.

*C. G. Gardner*, (*R. W. Stoddard* with him,) for the defendants.

*W. H. McClintock*, (*J. F. Jennings* with him,) for the plaintiff.

BRALEY, J.    The denial of the defendants' anomalous motion to dismiss the amended or substitute bill because it did not state a case for equitable relief, and the overruling of their objections to the allowance of the amended bill, which was purely dis-

cretionary with the presiding judge, not having been argued, require no further comment. But, as the substantial grounds of the motion were embodied in the demurrer, the disposition of which is shown only by the docket entry "demurrer overruled," the first question is, whether the defendants' appeal, which appears to have been seasonably taken, is properly before us. The better and more satisfactory practice would have been to enter an interlocutory decree, but the order of "demurrer overruled" is the final judgment of the court duly entered upon the docket. If an appeal does not lie upon the record, the defendants, upon whom rested no duty to prepare a decree, are remediless, as the defenses raised by the demurrer are not set forth in the answer. *Thompson* v. *Goulding*, 5 Allen, 81, 84, 85. *Saltman* v. *Nesson*, 201 Mass. 534, 539, 540. Appeals from the denial by a single justice of motions to frame issues for a jury have been entertained where no interlocutory decree apparently had been entered. *Stockbridge Iron Co.* v. *Hudson Iron Co.* 102 Mass. 45. *Ross* v. *New England Mutual Ins. Co.* 120 Mass. 113, 117. *Ginn* v. *Almy*, 212 Mass. 486, 494. In *Ross* v. *New England Mutual Ins. Co.*, it is said, "Under our . . . practice, an order in equity, granting or refusing a motion for issues to a jury, is subject to revision on appeal," and in *Stockbridge Iron Co.* v. *Hudson Iron Co.*, the order overruling motions for issues is referred to in the opinion as "an interlocutory decree." It is stated in the headnote to *Parker* v. *Flagg*, 127 Mass. 28, that "under the Gen. Sts. c. 113, §§ 6, 8, 10, 11, an order which merely sustains a demurrer to a bill in equity, without more, is an interlocutory and not a final decree." The provisions of the General Statutes governing appeals from interlocutory orders or decrees are now found in R. L. c. 159, §§ 25, 26, 27. In *Burnett* v. *Commonwealth*, 169 Mass. 417, and in *Cawley* v. *Jean*, 189 Mass. 220, 227, where these sections are construed no distinction is made as to the right of appeal between an interlocutory order and an interlocutory decree, while in *Harrell* v. *Sonnabend*, 191 Mass. 310, 311, Hammond, J., says, "The order overruling the demurrer was an interlocutory decree." We have not been unmindful of our decision in *Merrill* v. *Beckwith*, 168 Mass. 72, holding that under a rescript directing the bill to be dismissed the plaintiff until the decree had been entered could amend his bill into an action at law. But as explained

in *Lakin* v. *Lawrence*, 195 Mass. 27, 28, the rescript of the full court of "bill dismissed," was not a decree, but merely an order for a decree to be entered by a single justice.

But, if the appeal is properly before us, the demurrers cannot be sustained. By acceptance of the rent as it accrued, the defendant Nelson, who knew of and assented to the mesne assignments from the original lessee under which the plaintiff claimed the leasehold, waived the condition imposed by the covenant against assigning the lease or underletting, and his repeated entrance thereon and forcible interference with the plaintiff's possession was unlawful. *O'Keefe* v. *Kennedy*, 3 Cush. 325. *Milkman* v. *Ordway*, 106 Mass. 232, 259. *Skally* v. *Shute*, 132 Mass. 367. *King* v. *Bird*, 148 Mass. 572. *International Trust Co.* v. *Schumann*, 158 Mass. 287, 291. *Roth* v. *Adams*, 185 Mass. 341, 344. The remedy by an action at law in damages for these persistent trespasses alleged to have been participated in by the co-defendant to which Nelson subsequently had leased the premises, is not complete. If injunctive relief cannot be obtained to restrain the continuous assertion of a right of re-entry where upon the averments of the bill such a right does not exist, the plaintiff is subjected to vexatious litigation and must resort to a multiplicity of actions. The right to possession can be determined in equity as well as at law, and, as the defendants acted with a common purpose to dispossess the plaintiff, damages can be assessed against them either jointly or severally by appropriate decrees. *O'Brien* v. *Murphy*, 189 Mass. 353, 357. *Von Arnim* v. *American Tube Works*, 188 Mass. 515. *Ginn* v. *Almy*, 212 Mass. 486.

Nor does error appear at the trial of the merits. The evidence is not reported, and under the judge's findings all the material allegations were proved. The case then was referred to a master to assess damages, and the defendants' exceptions to the admission of certain opinion evidence offered by the plaintiff as to the value of the leasehold remain.

The leased premises consisted of a theatre adapted for the production of motion pictures and illustrated songs, or pictorial vaudeville. The master reports, that through the defendants' tortious acts the plaintiff was dispossessed and deprived of a profitable business for a period slightly exceeding five weeks before possession was restored. To assess damages on the basis of the

difference between the actual value of the leasehold as an estate for a term of years which should have been enjoyed, and the rent reserved, as in *Riley* v. *Hale,* 158 Mass. 240, would not afford full compensation. The existing business of the plaintiff which was connected and combined with the leasehold had been deliberately and persistently interfered with to the point of absolute suspension and temporary extinction by the defendants, who must be deemed to have contemplated the natural and direct results of their conduct. *Hill* v. *Winsor,* 118 Mass. 251. *French* v. *Connecticut River Lumber Co.* 145 Mass. 261. *Weston* v. *Boston & Maine Railroad,* 190 Mass. 298. *Hanson & Parker* v. *Wittenberg,* 205 Mass. 319, 327, 328. The plaintiff does not claim compensation for impairment of the good will which is distinct from profits. Its damages even if measured by the real commercial value of the leasehold could not be fixed exactly, but depended largely on estimated receipts and expenditures during the period of eviction, and profits reasonably to be anticipated are when ascertained to be considered in the assessment. *Neal* v. *Jefferson,* 212 Mass. 517, and cases cited. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 381. The defendants do not appear to question this, but contend generally, that opinion evidence of the value of the leasehold during the weeks in question "over and above the rent and operating expenses" founded upon previous gross receipts and net earnings was inadmissible. The objectionable features of such evidence were pointed out in *Cochrane* v. *Commonwealth,* 175 Mass. 299. But, where the witness shows the necessary knowledge and experience, ordinarily the admission or rejection of the testimony is within the discretion of the judge presiding at the trial. *Howland* v. *Westport,* 172 Mass. 373. *Conness* v. *Commonwealth,* 184 Mass. 541, 544. *Lakeside Manuf. Co.* v. *Worcester,* 186 Mass. 552, 560. *Sargent* v. *Merrimac,* 196 Mass. 171. *Fourth National Bank* v. *Commonwealth,* 212 Mass. 66. The master reports, and their testimony shows, that from large experience each of the experts was familiar with the management and supervision of theatres presenting the same class of entertainment in various localities, as well as with the size, seating capacity and location of the plaintiff's property. The defendants had excepted to the admission in evidence of the gross receipts and net profits of the plaintiff company to show the nature and

magnitude of the business during the previous year, although this exception to the report has not been argued. It clearly was competent. *Neal* v. *Jefferson,* 212 Mass. 517, 523. *Allison* v. *Chandler,* 11 Mich. 542, 562. The master doubtless was of opinion that from their qualifications the testimony possibly might guide and aid him in the just ascertainment and sound estimation of the actual damages the plaintiff had suffered. The question is close, and not free from difficulty. While the master would have ruled more judiciously if he had rejected the evidence, it cannot be said positively there were no aspects of the entire testimony which tended to support his view, or that his discretion was so grossly exercised in the plaintiff's favor as to render his decision plainly wrong. *Conness* v. *Commonwealth,* 184 Mass. 541, 544.

The order overruling the demurrer is affirmed. But the final decree must be modified by a clause overruling the exceptions to, and confirming the master's report; and by providing in the third paragraph that the defendant Dunn as executor of the will of Nelson shall be charged severally and not jointly with the co-defendant in the payment of damages, and that if execution issues therefor, or for the amount named in the fifth paragraph, it is to run against the goods and estate of the deceased in his hands. R. L. c. 171, §§ 1, 5, 7; c. 172, § 7. *Von Arnim* v. *American Tube Works,* 188 Mass. 515, 520. *Lovejoy* v. *Bailey,* 214 Mass. 134.

The decree when thus modified is affirmed with costs of the appeal.

*Ordered accordingly.*